IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SIGIEFREDO ("SIG") SANCHEZ,

    Plaintiff,

vs.                                                   No. CIV-13-00656-KG/LF

THE UNITED STATES DEPARTMENT
OF ENERGY AND DR. HENRY MONIZ,
THE UNITED STATES SECRETARY OF
ENERGY, IN HIS OFFICIAL CAPACITY,

    Defendants.

MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion for Judgment on the Pleadings and Memorandum of Points and Authorities in Support Thereof (Motion for Judgment on the Pleadings), filed November 27, 2013. (Doc. 27). On December 23, 2013, Plaintiff responded and Defendants replied on February 10, 2014. (Docs. 38 and 47). Having considered Defendants' Motion for Judgment on the Pleadings, the corresponding briefs, and the applicable law the Court hereby grants Defendants' Motion for Judgment on the Pleadings.

    A. *Background*

The following background information comes from the well-pleaded facts included in Plaintiff's Complaint (Doc. 1).

In August 2006, Plaintiff was hired by the Department of Energy (the Agency) as an Emergency Operations Specialist (EOS) at the Agency's National Nuclear Security Administration, Office of Secure Transportation facility in Albuquerque, New Mexico. The EOS position is a duly designated position requiring the candidate to hold and maintain certification through the Agency's Human Reliability Program (HRP) pursuant to 10 C.F.R. §

712. The OES position and HRP certification require several screenings and background investigations, including psychological testing and a medical assessment. *See* 10 C.F.R. § 712.11. During the pre-certification process, Plaintiff was not diagnosed with dyslexia. In approximately February 2007, Plaintiff became HRP certified.

On August 5, 2007, at the end of a graveyard shift that began the evening of August 4, 2007, Plaintiff read the morning shift brief aloud.[1] Based on Plaintiff's performance of reading the shift brief, his supervisors expressed concern that he may have some form of a reading problem. The following day, August 6, 2007, the concerns were reported to John Vukosovich (Mr. Vukosovich), Plaintiff's senior supervisor. Mr. Vukosovich and Suzanne Garcia, the Agency's HRP Reliability Manager, recommended that Plaintiff meet with Daniel Seagrave, Psy.D., ABPP (Dr. Seagrave), an Office of Secure Transportation contract psychologist.

On August 16, 2007, Dr. Seagrave interviewed Plaintiff's two supervisors, Mr. Vukosovich and Bernard Tye (Mr. Tye). During the interviews, Mr. Vukosovich and Mr. Tye disclosed a concern that a reading problem could significantly interfere with Plaintiff's EOS duties. They also characterized Plaintiff as slow in learning his job. That same day, Dr. Seagrave interviewed Plaintiff and conducted a psychological evaluation.

On August 22, 2007, Plaintiff was removed from his HRP duties. As a result, Plaintiff's duties were restricted to research and filing weather conditions. Plaintiff was no longer authorized to answer the telephone, log onto the classified computer, handle the trip folder, answer 9-1-1 calls, or relay any information to convoy commanders. In addition, Plaintiff was required to sit in a separate room during the reading of the morning shift brief.

---

[1] In the Complaint, Plaintiff alleges the incident occurred on June 29, 2007, but later alleges the incident occurred on August 5, 2007. *See* (Doc. 1) at 2, 7. Because Plaintiff's response brief states the incident occurred on August 5, 2007, the Court construes the event as occurring on that date. *See* (Doc. 38) at 4.

At some point, Stephen Chiulli, Ph.D. (Dr. Chiulli) and Anthony Traweek, Ph.D. (Dr. Traweek) conducted an Agency neuropsychological evaluation of Plaintiff.  Dr. Chiulli reported that Plaintiff had a Mixed Receptive-Expressive Language Disorder and that Plaintiff exhibited signs of dyslexia.  Subsequently, Mr. Vukosovich read Dr. Chiulli's report.

On August 31, 2007, Plaintiff left work early because he felt extremely lightheaded and his heart was pumping quickly.  Plaintiff immediately went to the New Mexico VA Medical Center and was instructed not to return to work until cleared medically.

Shortly thereafter, on September 11, 2007, Melissa Meth, a Psychiatric Nurse Practitioner at the VA Medical Center, diagnosed Plaintiff with anxiety, insomnia, abdominal pain, nausea, vomiting and diarrhea due to work related stress.  On this same day, the Agency's psychologist met with Plaintiff to discuss the Agency's dyslexia diagnosis.[2]  Plaintiff was then placed on administrative leave on September 13, 2007.

Then, on September 24, 2007, Dr. Traweek, the Agency's Lead Psychologist of the HRP, submitted his formal recommendations regarding Plaintiff's suitability for HRP.  Dr. Traweek recommended that Plaintiff not be recertified under HRP as "recertification under HRP would present an unacceptable and unnecessary risk to the safe and secure transport of nuclear assets and attendant personnel." (Doc. 1-2) at 2.  Dr. Traweek also recommended that the Agency "[f]acilitate Mr. Sanchez' pursuit of appropriate Federal employment in which there is a possibility for reasonable accommodation of his apparent Mixed Receptive-Expressive Language Disorder." *Id.*  Finally, Dr. Traweek recommended that Plaintiff be afforded an "opportunity to personally discuss the findings and recommendations of the special evaluation process with Dr.

---

[2]  In the Complaint, Plaintiff states the Agency's psychologist met with Plaintiff twenty days after Plaintiff was removed from his duties.  Plaintiff was removed from his HRP duties on August 22, 2007.  It follows that twenty days from August 22, 2007, is September 11, 2007.

Seagrave." *Id.* Dr. Traweek's findings and recommendations were also presented to the HRP hearing officer.

On November 6, 2007, Plaintiff's EEO Counselor contacted Melissa Maestas (Ms. Maestas), the Agency's Human Resources Manager, to ask if Plaintiff could be reassigned to a non-HRP position. Ms. Maestas informed Plaintiff that she would attempt to reassign him to a non-HRP position, but the Agency was under no obligation to do so. Ms. Maestas also encouraged Plaintiff to apply for vacant positions within the Agency.

Thereafter, the Agency issued an SF-50 stating Plaintiff's removal was for cause by "failure to maintain a condition of employment." On December 21, 2007, Plaintiff filed an Equal Opportunity Employment Complaint based on disability discrimination and the allegation that he intentionally or volitionally failed to "maintain" a condition of employment per the SF-50.

On April 16, 2008, Plaintiff emailed Ms. Maestas to determine whether he could return to work or be reassigned. Ms. Maestas stated that there was no reassignment action in place or planned. The following day, Plaintiff emailed the same questions to Michael Jordan (Mr. Jordan), his supervisor. Mr. Jordan replied and informed Plaintiff to direct all questions to Mr. Vukosovich, the senior supervisor.

On September 12, 2008, Plaintiff received a Notice of Proposal to Suspend Indefinitely Plaintiff from his position as an EOS. The notice informed Plaintiff of his opportunity to respond orally or in writing to the deciding official, Mr. Vukosovich. On September 24, 2008, Plaintiff's attorney sent a written response to Mr. Craig Tucker (Mr. Tucker), Assistant Deputy Administrator of Office of Secure Transportation. In the response, Plaintiff first requested that the Agency accommodate him by assigning him to a non-HRP position. Plaintiff further

4

requested that Mr. Tucker appoint an impartial deciding official to review the indefinite suspension. The written response stated Mr. Vukosovich was not impartial because he made previous threats to terminate Plaintiff's employment and he failed to reasonably accommodate Plaintiff per Dr. Traweek's recommendation. Plaintiff's written response was forwarded to Mr. Vukosovich.

On October 31, 2008, Mr. Vukosovich sent Plaintiff a Decision on Proposed Indefinite Suspension. In the letter, Mr. Vukosovich stated that Plaintiff's requests regarding an impartial decision maker and a reasonable accommodation were "a separate issue" that had "no bearing on the matter."[3] Mr. Vukosovich further stated that he considered the Douglas factors in arriving at his decision. Under the particular circumstances, Mr. Vukosovich "did not find any of the [Douglas] factors to be mitigating." (Doc. 1-3) at 2. Mr. Vukosovich, however, "considered as aggravating [Plaintiff's] inability to perform [his] duties without HRP certification, [his] awareness of the requirement to maintain HRP and the lack of other work to which [he] could be assigned that does not require HRP certification." *Id.* Finally, the letter informed Plaintiff that the Operations Division, Plaintiff's former division, did not have other positions available that did not require HRP certification. Mr. Vukosovich, and Ann Van Tassel, Plaintiff's contact at the Office of Human Capital Management Services, did not attempt to locate Plaintiff a non-HRP position outside the Operations Division. Subsequently, Mr. Vukosovich indefinitely suspended Plaintiff pending resolution of Plaintiff's HRP certification.

During the administrative hearings, it was unearthed that non-HRP positions existed in divisions within the Office of Secure Transportation, other than the Operations Division. Specifically, after Plaintiff lost his HRP certification on August 22, 2007, approximately twenty-eight non-HRP positions were available in the greater Albuquerque, New Mexico area.

---

[3] The letter indicates that these requests were filed under a separate Agency case number. (Doc. 1-3) at 1.

On January 15, 2009, a hearing was conducted regarding Plaintiff's HRP certification. At the hearing, John H. King, Ph.D., ABPP-CN (Dr. King), Plaintiff's expert testified that due to his disability he could not perform HRP duties. Dr. King, however, testified that Plaintiff was capable of performing non-HRP positions. Afterwards, on February 9, 2009, and February 17, 2009, Plaintiff sent a letter to the Agency requesting a reassignment accommodation.

On February 26, 2009, the hearing officer, the Honorable Kent Woods, recommended removal of Plaintiff's HRP certification. On September 17, 2009, Daniel B. Poneman, the Deputy Secretary of the Department of Energy, issued a final decision removing Plaintiff's HRP certification. On October 16, 2009, Plaintiff received a notice of proposed removal, which included the reasons for the proposed action and Plaintiff's rights available to him. On November 3, 2009, Plaintiff submitted a written response requesting a reasonable accommodation for his disability and an impartial decision maker.

On November 30, 2009, Mr. Vukosovich mailed Plaintiff a Notice of Decision to Remove based on Plaintiff's loss of HRP certification, effective as December 6, 2009. In the notice Mr. Vukosovich stated, "I have carefully considered your reply and the reasons and specifications contained in the Notice of Proposed Removal fully and impartially." The notice did not acknowledge Plaintiff's request for an accommodation.

Plaintiff now brings this disability discrimination, retaliation, and due process lawsuit against Defendants for alleged violations pursuant to the Rehabilitation Act of 1973 § 501, as amended, 29 U.S.C. § 791, and the Fifth Amendment of the United States Constitution. In Count I, Plaintiff brings a Rehabilitation Act claim for failure to provide a reasonable accommodation for his known disability, dyslexia. In Count II, Plaintiff alleges a Rehabilitation Act claim for disparate treatment. In Count III, Plaintiff asserts Mr. Vukosovich, Plaintiff's former supervisor

and a non-party to the suit, retaliated against Plaintiff after he filed an Equal Employment Opportunity Commission complaint.[4]  In Count IV, Plaintiff contends that his Fifth Amendment due process rights were violated because Mr. Vukosovich was not an impartial decision maker in determining Plaintiff's suspension and subsequent termination.

Defendants now move for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Plaintiff opposes the motion in its entirety.

B.  *Standard of Review*

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Rule 12(c) is designed "to provide a means of disposing of cases when the material facts are not in dispute between the parties."  *Peña v. Greffet*, 110 F. Supp. 3d 1103, 1112 (D.N.M. 2015) (citing *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 54 (3d Cir. 1994)).  "Judgment on the pleadings should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."  *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated by Adams v. Jones*, 577 Fed. Appx. 778 (10th Cir. 2014) (quotation omitted).  Accordingly, a court reviewing a motion for judgment on the pleadings must accept "all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same."  *Id.*  Rule 12(c) motions are generally treated like motions to dismiss under Rule 12(b)(6),

---

[4] The Court notes that the Rehabilitation Act prohibits employment discrimination against individuals with disabilities in the federal sector. 29 U.S.C. § 791. Title VII of the Civil Rights Act of 1964, however, prohibits employment discrimination based on race, color, religion, sex, national origin; and further prohibits employers from retaliating against employees based on an employee's opposition to employment discrimination or complaint of discrimination. 42 U.S.C. §§ 2000e-2–2000e-3(a). In his Complaint, Plaintiff brings Count III as a claim under the Rehabilitation Act. *See* (Doc. 1) at 1. The parties, moreover, treat Count III as alleged violations under the Rehabilitation Act. *See* (Docs. 27 and 38). The Court, therefore, construes Count III as alleging retaliation under the Rehabilitation Act.

except that claims dismissed under Rule 12(c) are dismissed with prejudice.  *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002); *Peña*, 110 F. Supp. 3d at 1112.

    C.  Discussion

Defendants move for judgment on the pleadings—and dismissal—of all of Plaintiff's claims.  Defendants contend that Plaintiff's challenge to the Agency's decision to revoke his HRP certification and, consequently, terminate Plaintiff is not justiciable under *Department of the Navy v. Egan*, 484 U.S. 518 (1988).  More particularly, Defendants assert *Egan* precludes this Court from considering whether the Agency was required to provide Plaintiff a reasonable accommodation under the Rehabilitation Act.  The Tenth Circuit has held that "transfer accommodations" under the Rehabilitation Act are mandatory "only if an employee, because of disability, can no longer perform the essential functions of the job that she or he has held." *Sanchez v. Vilsack*, 695 F.3d 1174, 1180 (10th Cir. 2012) (citation and quotation omitted). Because Plaintiff was removed for failure to maintain HRP certification, not due to a disability, Defendants maintain that a review of Plaintiff's Rehabilitation Act claims would require this Court to analyze the merits of the Agency's HRP certification decision—an analysis that is barred by *Egan*.  Furthermore, Defendants claim Plaintiff has failed to identify a plausible property or liberty interest under the Fifth Amendment.

In turn, Plaintiff concedes that the Agency's decision to revoke his HRP certification is nonjusticiable.  Plaintiff, rather, argues that pursuant to *Egan* the Agency was required to reassign Plaintiff to a vacant non-HRP position.  Moreover, Plaintiff asserts that *Egan* grants this Court authority to review his due process claim; specifically, that the Agency failed to comply with Executive Order No. 10,450 in its removal and termination of Plaintiff.

    a.  *The Reviewability of Plaintiff's Rehabilitation Act Claims*

8

In *Egan*, the Navy denied the plaintiff a required security clearance on the basis of the plaintiff's prior criminal record and his failure to disclose said record. 484 U.S. at 521. Subsequently, the Navy terminated the plaintiff for failure to acquire the requisite security clearance for his position. *Id.* at 522. Notably, the Navy did not reassign the plaintiff to a nonsensitive position because none were available. *Id.* The plaintiff appealed his termination to the Merit Systems Protection Board (MSPB) to no avail. *Id.* at 524.

On review, the Supreme Court faced "[t]he narrow question . . . [of] whether the [MSPB] has authority by statute to review the substance of an underlying decision to deny or revoke a security clearance in the course of reviewing an adverse action." *Id.* at 520. The Supreme Court held that the MSPB performs a limited role in adverse action cases involving national security concerns. *Id.* at 530. The Supreme Court noted that the authority to protect national security information lies inherently within the discretion of the Executive Branch. *Id.* at 527. And, as such, it is reasonable that "an agency head who must bear the responsibility for the protection of classified information committed to his custody should have the final say in deciding whether to repose his trust in an employee who has access to such information." *Id.* at 529 (quotation omitted). The Supreme Court, therefore, concluded that Congress specifically limited the MSPB's review, and implicitly a court's authority, to determine whether: (1) an Executive Branch employer determined the federal employee's position required a security clearance; (2) clearance was denied, suspended, or revoked; (3) the federal employee was provided with the procedural protections afforded in 5 U.S.C. § 7513; and (4) "transfer to a nonsensitive position was feasible." *Id.* at 530. "As a result, Congress presumably has left the President and the Executive Branch agencies broad discretion to exercise their powers in this area." *Kaplan v.*

*Conyers*, 733 F.3d 1148, 1160 (Fed. Cir. 2013) (citing *Dames & Moore v. Regan*, 453 U.S. 654, 678 (1981)).

Plaintiff's contention that his Rehabilitation Act claims are justiciable relies solely on the Supreme Court's consideration that the MSPB may determine "whether transfer to a nonsensitive position was feasible." *Egan* progeny, however, guides this Court to find otherwise. In *Griffin v. Defense Mapping Agency*, the Federal Circuit limited the scope of the feasibility passage "as recognition of a [MSPB] role in reviewing the feasibility of transfer to a nonsensitive position *if* that substantive right is available from some other source, such as a statute or regulation." 864 F.2d 1579, 1580 (Fed. Cir. 1989) (emphasis added). The Federal Circuit found that it was not the Supreme Court's intent to "so casually create[] a new substantive requirement never thought to exist before" that would impose an obligation on the government to transfer employees to nonsensitive positions upon losing their security clearance. *Id.* Indeed, several courts have followed the Federal Circuit's narrow interpretation of the feasibility passage. *See Ryan v. Dep't of Homeland Sec.*, 793 F.3d 1368, 1373 (Fed. Cir. 2015); *Hesse v. Dep't of State*, 217 F.3d 1372, 1381 (Fed. Cir. 2000); *Abella v. U.S.*, 34 Fed. Cl. 452, 456 (Fed. Cl. 1995); *Guillot v. Garrett*, 970 F.2d 1320, 1326–27 (4th Cir. 1992); *Jamil v. Sec., Dep't of Defense*, 910 F.2d 1203 (4th Cir. 1990); *Lyles v. Dep't of the Army*, 864 F.2d 1581, 1583 (Fed. Cir. 1989). Conversely, it is noteworthy that Plaintiff has provided no authority interpreting the feasibility passage as a new substantive right—other than *Egan*—and the Court has found none.

Based on the foregoing, this Court agrees with the circuits that the Supreme Court did not intend to impose on the Agency an obligation, absent a statute or regulation, to transfer Plaintiff to a nonsensitive position upon losing his HRP certification. In this case, Plaintiff's Complaint does not reference or indicate an independent statute or regulation, other than the Rehabilitation

Act.  Notwithstanding this deficiency, Plaintiff's response contends that 10 C.F.R. § 712.36(h)(2)[5], in collaboration with 10 C.F.R. § 712.31, mandates that the Agency reassign Plaintiff to a non-HRP position.  The plain language of Section 712.36(h)(2) delineates a possible transfer to individuals who have received treatment—from a provider other than the Agency's Designated Physician—for a disqualifying condition.  Plaintiff does not claim that he has received treatment from an outside physician for a disqualifying condition.  In fact, Plaintiff's only reference to a physician, other than the Agency's physicians, is his expert, Dr. King.  The Complaint and record are void of Plaintiff actually receiving treatment from Dr. King.  It appears from the pleadings that Plaintiff only met with Dr. King for a diagnosis, which corroborated the Agency's experts' findings.  In addition, 10 C.F.R. § 712.31 merely states the purpose of the HRP medical standards.  The regulation does not grant the right to reassignment.  Finally, Plaintiff argues that 10 C.F.R. § 712.36(g) also supports his proposition.  Plaintiff's contention is inapposite to the plain language of the regulation.  The regulation specifically addresses "accommodations for HRP-certified individuals."  It is undisputed that Plaintiff's HRP certification was revoked and, consequently, Plaintiff does not fall within the parameters of this regulation.

      Furthermore, the Rehabilitation Act does not afford Plaintiff a right to transfer under the circumstances in this case.  There is dearth of case law holding that "[e]ven under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–96 (1982), where there is a duty to reasonably accommodate handicapped employees, the employer is not required to 'find another job for an employee who is not qualified for the job he or she was doing, . . . [unless there are] alternative employment opportunities reasonably available under the employer's existing policies.'"  *Griffin*,

---

[5] In the response, Plaintiff cites 10 C.F.R. 712.36(g)(2), this regulation does not exist. A review of 10 C.F.R. 712.36 evidences that Plaintiff intended to cite subsection (h)(2).

11

864 F.2d at 1580 (quoting *Sch. Bd. v. Arline*, 480 U.S. 273, 289 n.19 (1987); *see also McCollough v. Atlanta Beverage Co.*, 929 F. Supp. 1489, 1504 (N.D. Ga. 1996); *Mendenhall v. Koch Serv., Inc.*, 872 F. Supp. 907 (1993), *rev'd on other grounds by*, 37 F.3d 1509 (10th Cir. 1994) (citing *Guillot*, 970 F.2d at 1326–27; *Mackie v. Runyon*, 804 F. Supp. 1508 (M.D. Fla. 1992) (citing *Wimbley v. Bolger*, 642 F. Supp. 481, 486 (W.D. Tenn. 1986), *Carty v. Carlin*, 623 F. Supp. 1181, 1188–89 (D. Md. 1985), *Alderson v. Postmaster Gen. of U.S.*, 598 F. Supp. 49, 55 (W.D. Okla. 1984)); *Alexander v. Frank*, 777 F. Supp. 516, 524 (N.D. Tex. 1991); *Fowler v. Frank*, 702 F. Supp. 143, 147 (E.D. Mich. 1988); *Fields v. Lyng*, 705 F. Supp. 1134, 1137 (D. Md. 1988) *aff'd* 888 F. 2d 1385 (4th Cir. 1989); *Davis v. U.S. Postal Serv.*, 675 F. Supp 225, 233–34 (M.D. Pa. 1987); *Am. Fed'n of Gov't of Emps. Local 51 v. Baker*, 677 F. Supp. 636, 638 (N.D. Cal. 1987)).

In other words, if the Agency had an "existing policy," embodied by regulation, to transfer HRP-certified individuals to nonsensitive positions upon losing HRP certification, the Agency could be held to that policy. *Griffin*, 864 F.2d at 1580–81. Hence, Plaintiff's challenge would fall under this Court's jurisdiction. The regulations cited by Plaintiff, as discussed in detail above, do not meet this standard. Moreover, the Agency's internal Procedures to Facilitate the Provision of Reasonable Accommodation for Individuals with Disabilities, referenced in Plaintiff's Complaint, are insufficient to create a claim. The pleadings do not demonstrate that the Agency's internal policies are manifested by regulation. Nor do the pleadings evidence that the internal policies require the Agency to transfer employees who no longer hold HRP certification to non-HRP positions. As such, the Agency is not required to reassign Plaintiff to a non-HRP position and failure to do so does not create a substantive right for Plaintiff to receive a non-HRP position within the Agency. *See Abella*, 34 Fed. Cl. at 456.

The Court, therefore, finds that Plaintiff's Rehabilitation Act claims are barred by *Egan* because Plaintiff's pleadings do not sufficiently state an independent statute, regulation, or internal policy mandating transfer to a non-HRP position. Defendants are entitled to judgment on the pleadings on Count I, II, and III accordingly.

### b. Plaintiff's Due Process Claims

#### i. New Due Process Claims Raised in Plaintiff's Response Brief

As a procedural matter, Plaintiff's response brief asserts several liberty and property due process claims that were not raised within the Complaint. For instance, Plaintiff contends that the Agency's SF-50 stating Plaintiff was removed for cause for "failure to maintain a condition of employment" foreclosed other employment opportunities resulting in a deprivation of liberty without due process. Plaintiff cites *Miller v. City of Mission, Kansas*, 705 F.2d 368 (10th Cir. 1983), in support of his contention. Next, Plaintiff asserts that he possesses "a property interest in a determination under *Egan* and the Rehabilitation Act and the Agency's own regulations to reassignment to a non-HRP position where 'feasible.'" (Doc. 38) at 27. Plaintiff cites no authority in support of his assertion. Finally, Plaintiff claims the Agency failed to comply with Executive Order 10,450, which requires the removal an employee by the "head of the department or agency." The Court construes the latter claim as a procedural due process violation. Because Plaintiff failed to assert any of these due process claims within his pleadings the Court finds these arguments are beyond the scope of the pleadings and, consequently, will not be considered by this Court. *See Alvarado v. Utah*, 601 Fed. Appx. 750, 752 (10th Cir. 2015) (plaintiff may not assert claims not included in complaint).

Further, even if the Court were to recognize Plaintiff's claims, the Court finds that the arguments are without merit. With respect to Plaintiff's liberty interest claim, the Court agrees

with Defendants that *Miller* is distinguishable from this case. In *Miller*, the Tenth Circuit addressed a liberty interest claim where the mayor issued a press release stating the reasons for a public employee's termination. 705 F.2d at 371. The Court held that when a public employee's "termination is accompanied by public dissemination of the reasons for dismissal, and those reasons would stigmatize the employee's reputation or foreclose future employment opportunities, due process requires that the employee be provided a hearing at which he may test the validity of the proffered grounds for dismissal." *Id.* at 373. In the case at hand, Plaintiff does not allege that the Agency publically disseminated the SF-50 or the reasons for which he was terminated. Further, Plaintiff does not contend that he was not provided a hearing to challenge the validity of his HRP certification revocation. More importantly, the Supreme Court has held that revocation of a security clearance, such as HRP certification, does not constitute adjudication on an individual's character. *Egan*, 484 U.S. at 528. Thus, the issuance of the SF-50 did not implicate a liberty interest.

Similarly, the Court finds that Plaintiff's contention that *Egan* and the Rehabilitation Act create a property interest in reassignment to a non-HRP position lacks merit. As the Court addressed thoroughly above, *Egan* bars Plaintiff's claim that he was entitled to reassignment to a non-HRP position upon losing his HRP certification. Although Plaintiff had a property interest in his continued employment, *Egan* does not establish a property interest in reassignment.

In regards to Plaintiff's procedural due process claim that he was not removed by the "head of the department or agency," Plaintiff states that the Agency "presumably" terminated Plaintiff pursuant to Executive Order 10,450. Defendants' motion and reply indicate otherwise. Plaintiff was removed for cause pursuant to 5 U.S.C. § 7513. Plaintiff does not allege that the Agency violated any of the procedural safeguards enumerated in Section 7513. Further, even if

Executive Order 10,450 controlled, Congress has explicitly vested authority over the Agency's National Nuclear Security Administration's personnel decisions to the Under Secretary for Nuclear Security, who may delegate and redelegate that authority. *See* 50 U.S.C. § 2402.[6] Plaintiff's contention that he must be removed by the head of the Agency lacks merit in light of the Agency's authority to delegate personnel decisions. Moreover, when an individual is removed for cause, like in this case, a delegate may remove that individual as long as the delegate holds a superior position than the individual who proposed the removal.[7] Here, the hearing officer, the Honorable Kent Woods, recommended removal of Plaintiff's HRP certification. Then, Daniel B. Poneman, the Deputy Secretary of the Department of Energy, issued a final decision removing Plaintiff's HRP certification. Plaintiff has provided no authority to demonstrate that the aforementioned procedure violated Executive Order 10,450, the Agency's directive, or Section 7513. Hence, Plaintiff's procedural due process claim is denied.

> ii.   *The Reviewability of Plaintiff's Procedural Due Process Claim*

In Count IV of the Complaint, Plaintiff asserts that his Fifth Amendment due process rights were violated because Mr. Vukosovich was not an impartial decision maker in determining Plaintiff's termination. In his response brief, Plaintiff maintains that the Agency violated Executive Order 10,450 by failing to provide "fair, impartial and equitable treatment" during his removal and subsequent termination. Plaintiff relies upon *Peters v. Hobby*, 349 U.S. 331 (1955), for the assertion that this Court has jurisdiction to review his due process claim.

It is well established that *Egan* grants this Court jurisdiction to determine whether a federal employee was provided with the procedural protections afforded in 5 U.S.C. § 7513. *Egan*, 484 U.S. at 530. Further, it is uncontested that this Court has the authority to require the

---

[6] *See also see also* Delegation Order 00-003D.02-01, *available at* https://www.directives.doe.gov/delegations/current-delegations-by-position.
[7] *See* Dep't of Energy Order 3750.1 Chg. 6, ¶ 4(c), *available at* https://www.directives.doe.gov/directives/3750.1-B.

Agency to follow its own regulations in suspending and terminating an employee. *Hill v. Dep't of Air Force*, 844 F.2d 1407, 1412 (10th Cir. 1988). Plaintiff's pleadings, however, do not point to a portion of Section 7513, a regulation, or a rule that the Agency allegedly violated. Rather, Plaintiff's procedural due process claim relies solely on the "fair, impartial, and equitable treatment" clause in Executive Order 10,450.

It is presumed that a decision maker will act with honesty and integrity. *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (internal citation and quotation omitted). A plaintiff must show "some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Id.* With respect to bias, a court must find "due process is violated only when the risk of unfairness is intolerably high under the circumstances of a particular case." *Id.* (internal citation and quotation omitted).

Here, Plaintiff's pleadings do not demonstrate substantial countervailing reasons to find Mr. Vukosovich was biased against Plaintiff in such a manner that the alleged bias created an intolerably high risk of unfairness regarding reassignment to a non-HRP position. As this Court previously found, Plaintiff failed to point to any statute, regulation, or internal policy that mandated the Agency transfer Plaintiff to a non-HRP position. Thus, it is irrelevant that Mr. Vukosovich and Ms. Maestas represented to Plaintiff that there were no non-HRP positions available for reassignment. Notably, Ms. Maestas specifically informed Plaintiff that the Agency was not required to reassign him to a non-HRP position.

On the other hand, if Plaintiff's contention is that Mr. Vukosovich was bias during the revocation process, the pleadings do not establish that such bias created an intolerably high risk of unfairness. Plaintiff's pleadings demonstrate that individuals—either other than Mr. Vukosovich or in concert with him—instigated the HRP evaluation, recommended removal of

16

Plaintiff's HRP certification, and made the final determination to remove Plaintiff's HRP certification.  In sum, Plaintiff's pleadings fall short of presenting a viable procedural due process claim for failure to provide an impartial decision maker.

The Court, therefore, finds that Plaintiff's pleadings do not sufficiently state a Fifth Amendment Due Process claim, and thus, Defendants are entitled to judgment on the pleadings on Count IV.

IT IS ORDERED that:

1.  Defendants' Motion for Judgment on the Pleadings and Memorandum of Points and Authorities in Support Thereof (Doc. 27) is granted;

2.  judgment on the pleadings will be entered in Defendants' favor on all counts in Plaintiff's Complaint (Doc. 1), filed July 15, 2013;

3.  Plaintiff's Rehabilitation Act claims against Defendants in Count I, Count II, and Count III of the Complaint will be dismissed with prejudice; and

4.  Plaintiff's Fifth Amendment Due Process claim against Defendants in Count IV of the Complaint will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE